IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GUY SHANNON, JR. #201038           *
                Plaintiff,
         v.                        *    CIVIL ACTION NO. ELH-11-3689

DR. NERO, *et al.*                 *

                Defendants.         *
                                   ***

MEMORANDUM

Guy Shannon, Jr., the self-represented plaintiff, filed a prisoner civil rights complaint under 42 U.S.C. § 1983, seeking compensatory and punitive damages.  When the suit was filed in December 2011, Shannon was confined at the Patuxent Institution ("Patuxent") in Maryland. He asserted a plethora of claims against multiple defendants, including, *inter alia*, that: (1) in September 2011, Dr. Dash knowingly ordered mental health nurse "Liz" to inject him with Haldol, an anti-psychotic medication, to which Shannon is allergic; (2) Dr. Itkowitz refused to transfer Shannon to a hospital after he experienced an allergic reaction to the injection;[1]  (3) Dr. Taler refused to take him off psychiatric medication that was causing him pain; (4) Psychologists Shoeman and Miller discriminated against him because he is gay and told him "we don't keep or treat gay inmate[s] in mental health;" (5) he was improperly placed on segregation for refusing a housing order, resulting in the loss of library, religious, phone and commissary privileges; and (6) he was denied access to religious services and kosher meals.  ECF 1.

Shannon also sought a preliminary injunction and temporary restraining order to prevent his transfer from Patuxent Institution to another facility of the Maryland Department of Public

_____

[1] Shannon also sought to have Dr. Dash, Nurse Liz, and Dr. Itkowitz criminally charged.

Safety and Correctional Services ("DPSCS").  *See* ECF 3, 4.  On January 31, 2012, the court

denied Shannon's request for a preliminary injunction and a restraining order, and ordered

Warden Goins-Johnson, CMS Medical,[2] Dr. Dash, Nurse Liz, Dr. Itkowitz, Psychologist

Shoeman, Psychologist Miller, and Dr. Tayler to file an answer. The many other defendants were

dismissed, however, as Shannon had failed to present any claims against them.  *See* ECF 5, 6.[3]

## I. Pending Motions

Pending before the court are Shannon's motion to meet with defendants to discuss

settlements (ECF 18); the motions to dismiss or, in the alternative, motions for summary

judgment filed by Warden Patricia Goins-Johnson, defendant (ECF 22, 26); the motion to

dismiss for failure to state a claim or, in the alternative, motion for summary judgment filed by

defendants Dr. Quandelin Dash, Elizabeth Gerst, Dr. Harvey Itskowitz, Dr. Ruth Shaw-Taylor,

Gilbert Miller, and Kyle Shuman (ECF 24) ("MHM defendants");[4] and defendant CMS

Medical's motion to dismiss for failure to state a claim or, in the alternative, for summary

judgment.  *See* ECF 28.  Defendants' motions are all unopposed.[5]  No hearing is necessary to

resolve the motions.  *See* Local Rule 105.6 (D. Md. 2011).

---

[2] Correctional Medical Services, Inc., or CMS Medical, is now known as Corizon, Inc. ("Corizon").

[3] The docket shall be modified to reflect the correct names of the following defendants: Dr. Quanelin Dash, Elizabeth Gerst, Dr. Harvey Itskowitz, Dr. Ruth Shaw-Taylor, Gilbert Miller, and Kyle Shuman.

[4] MHM Services, Inc. is the contract provider for mental health services at Patuxent.

[5] The record shows that Shannon was served with notice of defendants' filings pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and was granted an enlargement of time to file his opposition.  *See* ECF 23, 25, 27, 29, 34, and 37.

## II. Standard of Review

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  The motions are supported by several exhibits, including plaintiff's extensive medical records for the relevant period, produced by Corizon but, of import here, relating to the care and treatment also rendered by the MHM defendants.  *See* ECF 28, Ex. B.

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint.  *See McBurrey v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n. 3, (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

Under Rule 12(b)(6), the court must assume the truth of all well-pleaded allegations in the complaint.  *Albright v. Oliver,* 510 U.S. 266, 268 (1994); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).  And, it must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)).  Because

Shannon is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

Nevertheless, in evaluating the complaint, the court need not accept unsupported legal allegations.  *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] ... that the pleader is entitled to relief.'"  *Iqbal,* 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d at 442, 450 (4th Cir. 2007).  However, a motion styled in the alternative, *i.e.*, to dismiss or for summary judgment, implicates the court's discretion under F.R. Civ. P. 12(d) to consider matters outside of the pleadings.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159

4

(3d ed. 2004, 2011 Supp.).  This discretion "should be exercised with great caution and attention

to the parties' procedural rights." *Id.* at 149.   In general, courts are guided by whether

consideration of extraneous material "is likely to facilitate the disposition of the action," and

"whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.*

at 165-67.

When, as here, the movants expressly caption their motions "in the alternative," as one to

dismiss or for summary judgment, and submit matters outside the pleadings for the court's

consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may

occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v.*

*Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[6]  Ordinarily, however, summary

judgment is inappropriate "where the parties have not had an opportunity for reasonable

discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448 (4th

Cir. 2011).   But, "the party opposing summary judgment 'cannot complain that summary

judgment was granted without discovery unless that party has made an attempt to oppose the

motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet*

*Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv.*

*Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).   If the court determines to treat the motion as one for

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

summary judgment under Rule 56," "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).  Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'"  *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving

party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  Indeed, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted).

In this case, plaintiff has not filed any oppositions, nor has he filed an affidavit under Rule 56(d).  Moreover, I am satisfied that it is appropriate to address the defendants' motions as ones for summary judgment.

Summary Judgment is governed by Fed. R.Civ. P. 56(a), which provides, in part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In opposing the motion, the non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law.  *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

In resolving the motion, the court should "view the evidence in the light most favorable to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir. 2002). However, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

As noted, because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, *supra*, 551 U.S. at 94. The court must, however, abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp*., 477 U.S. at 323-24).

### III. Factual Summary

Warden Goins-Johnson is responsible for the operation of Patuxent, including the policies and procedures governing custody, maintenance, commissary, and dietary concerns. In her Declaration, Goins-Johnson states that Shannon is now housed at the Jessup Correctional Institution ("JCI"). Insofar as Shannon complains about his medical treatment, she avers that

she has "no supervisory control over the medical care providers," "lacks the authority to dictate the kind of treatment a patient is to receive," and cannot "influence the medical decisions of the private health care providers contracted to work with the state." ECF 22 & 26 at Ex. 1, Goins-Johnson Decl.   Moreover, Goins-Johnson avers that she neither interfered with nor delayed Shannon's health care.

Kristina Donnelly, the Executive Assistant to the Director of Patuxent, also filed a Declaration. *Id.* Ex. 2.  She states that Shannon was placed in the Correctional Mental Health Unit-Jessup ("CMHU") on August 25, 2011. *Id.* at Ex. 2.  An inmate's ability to leave the CMHU tier is dependent on his mental health status.  Inmates housed at levels 0 through 3 do not have library privileges due to restrictions on their movement.  However, they may request library materials, which are provided to them in accordance with policy and procedure.  Donnelly further states that, on or about November 17, 2011, Shannon received an increase to a level 4 mental health status classification, which eased restrictions on movements within the facility. On November 28, 2011, he was granted access to the library. *Id.*  The following day, however, Shannon was placed on disciplinary segregation after being charged with rule violations.  He remained on segregation until January 3, 2012.  On that date, he was transferred to JCI.  While Shannon was on disciplinary segregation for that one-month period, he could only obtain library materials by written request.  Donnelly avers that there is no record that Shannon sought library materials during that time period.

In addition, Donnelly asserts that, to the extent Shannon claims he was wrongly placed on segregation for refusing housing on or about November 29, 2011, the record shows that a correctional officer gave him a direct order to move from the N-3 tier to the N-2 tier and he

refused.  *Id*. at Exs. 3 & 4.  He was cited with a violation of Rule 400 (disobeying a direct order) and a violation of Rule 402 (out of bounds).  *Id*. at Ex. 2.  At his adjustment hearing on December 28, 2011, Shannon was found guilty of violating both institutional rules and sanctioned with 45 days of disciplinary segregation.  *Id*. at Ex. 4.

As to Shannon's claim that he was denied religious services and kosher meals, Donnelly claims that Jewish services are offered once a month in Corridor N of Patuxent and are provided by the Jewish Big Brothers and Sisters.  ECF 22 & 26 at Ex. 2.  Inmates may request attendance at religious services by completing a Religious Preference Registration Form.  *Id*. at Ex. 2. Shannon filed a form request sometime between November 17, 2011, and November 30, 2011, but by the time the form was processed, he was housed on disciplinary segregation.  This housing status prevented him from attending religious services due to security concerns. According to Donnelly, there is no record of Shannon complaining about denial of access to religious services.  Shannon did, however, request a religious diet on December 9, 2011, which was granted.  Donnelly avers that there is no record of Shannon complaining about being denied a religious diet.

Finally, Donnelly asserts that Shannon penned three complaints under the administrative remedy procedure grievance process.  These related to a broken phone, a racist comment, and a lack of coffee or tea for breakfast.  *Id*. at Exs. 2 & 6.

The MHM defendants assert only that Shannon's Eighth Amendment claims against them should be dismissed for failure to exhaust state administrative remedies, and that the court should not exercise supplemental jurisdiction as to any claims under the state law.  ECF 24.[7]

---

[7] The MHM defendants reserved the right to argue, *inter alia*, that defendant failed to

Corizon argues that it is not liable under the doctrine of *respondeat superior*, and that plaintiff did not receive inadequate medical care.  It also contends that it was not responsible for Shannon's care during the time he was housed  on the mental health unit at Patuxent.  ECF 28.

Additional facts will be included in the Discussion.  With the unopposed facts and legal standards in mind, the court shall address Shannon's claims.

## IV. Discussion

## A. Exhaustion

According to the unrefuted declarations of Executive Assistant Donnelly and Shivangi Moghe, PsyD., the Clinical Director for Correctional Mental Health Center-Jessup, Shannon did not file an Administrative Remedy Procedure ("ARP") grievance as to the Haldol prescription or as to any of the other claims raised in his complaint.  ECF 22 & 26 at Ex. 2; ECF 24 at Ex. A.

The Prison Litigation Reform Act of 1995 ("PLRA") requires that "prisoners . . . exhaust such administrative remedies as are available prior to filing suit in federal court."  *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (internal quotation marks omitted) (quoting 42 U.S.C. § 1997e(a)).  The PLRA, 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Exhaustion is mandatory, and unexhausted claims may not be brought in court.  *See Jones v. Bock*, 549 U.S. 199 (2007); *see Booth v. Churner*, 532 U.S. 731, 733-34, 739 (2001).  The phrase "prison conditions," found in § 1997e (a), encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes,

state a claim under the Eighth Amendment and that they are entitled to qualified immunity.  *See* ECF 24-1, at 1 n.2.

and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Thus, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Indeed, a district court may, *sua sponte*, "dismiss [ ] a complaint where the failure to exhaust is apparent from the face of the complaint," as long as the inmate is provided the "opportunity to respond to the issue" prior to dismissal. *Anderson*, 407 F.3d at 683.

In the Maryland correctional system, if the institution in which an inmate is incarcerated provides an administrative remedy procedure ("ARP"), the inmate must complete the ARP process as a condition precedent to further review. *See generally* Md. Code (2008 Repl. Vol., 2011 Supp.), §§ 10-201 to 10-210 of the Correctional Services Article ("C.S."); Code of Maryland Regulations ("COMAR") 12.07.01.02.D. Thereafter, the inmate may request further review by submission of a complaint to the Inmate Grievance Office ("IGO"), within 30 days. *See* COMAR 12.07.01.05.B; *see also* C.S. § 10-206. Complaints are reviewed preliminarily by the IGO, *see* C.S. § 10-207; COMAR 12.07.01.06, and, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge in the Maryland Office of Administrative Hearings. *See* C.J. § 10-208; COMAR 12.07.01.07-.08.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is

wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)-(c). In either event, the final agency determination is subject to judicial review in Maryland state court. *See* C.S. § 10-210.

Most of Shannon's claims fall under the exhaustion prerequisites of § 1997e(a). Goins-Johnson argues in her Memorandum that Patuxent has inmate grievance procedures, plaintiff used them three or four times, in October, November, and December of 2011, but that "there is no record of plaintiff filing any grievances concerning the current allegations." ECF 22-1, at 5 (citing Ex. 6); ECF 26-1, at 17 (citing Ex. 2, at ¶ 6). In particular, he did not grieve claims regarding his disciplinary segregation, library access, religious services, or diet. *See* ECF 22 & 26. Plaintiff has not responded to any of the motions, and thus has not shown that he satisfied the administrative exhaustion requirement, or that defendants forfeited their right to raise non-exhaustion as a defense. Plaintiff's failure to fully exhaust administrative remedies is undisputed; none of the complaints subject to grievance proceedings was exhausted in accordance with the scheme described above; and claims subject to the exhaustion requirement must be dismissed. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003). Here, all of the non-health related claims are subject to dismissal on this basis.

As indicated, the complaint also raises, in part, medical claims against medical/mental health staff employed by MHM, a private health services contractor with the DPSCS, and Corizon. As noted, the MHM defendants argued only the affirmative defense of failure to exhaust administrative remedies.

In *Adamson v. Correctional Medical Services, Inc*., 359 Md. 238 (2000), the Court of Appeals of Maryland examined the legislative history of the Maryland Administrative Remedy Procedure grievance process, and observed that it permits a prisoner to submit a complaint for grievances against officials or employees of the Maryland DOC and Patuxent. The state appellate court noted, however, that the IGO declines to hear prisoner grievances against private health care contractors. *Adamson*, 359 Md. 266-271. The Court of Appeals concluded that the Maryland prisoner administrative remedy process does not encompass complaints against private medical providers under contract with the state.

This Court has adopted the *Adamson* analysis and found that administrative exhaustion may not be raised as an affirmative defense by health care providers at DPSCS facilities. *See Shipe v. Mumby and Simmons,* 2012 WL 5417332 (D. Md. 2012)*; Chisum v. Maryland,* 2010 WL 481350 (D. Md. 2010); *Calhoun v. Horning, et al.,* 2009 WL 2913418 (D. Md. 2009). Therefore, in this case, the MHM employees may not rely on the defense of failure to exhaust.

Notwithstanding the inapplicability of exhaustion as an affirmative defense as to the MHM health care providers, summary judgment in favor of all defendants is appropriate, for the reasons articulated below.[8]

### B.  Medical Care

To state a cause of action under 42 U.S.C. § 1983, there must be an allegation of a

---

[8] After giving notice to the non-movant and a reasonable time to respond, the court may grant a summary judgment motion on grounds not raised by a party. Fed. R. Civ. P.  56(f). Failure to provide the required notice is reversible error, however. *See Coward v. Jabe*, 474 Fed. Appx. 961, 963 (4th Cir. 2012) (citing cases). In my view, plaintiff received the requisite notice because, as to MHM, I rely only on grounds asserted by the co-defendant health care provider, Corizon. Although plaintiff never responded to the motion of Corizon, he did receive actual notice of its grounds, some of which apply equally to MHM.

violation of a federal constitutional right or a right secured by federal law.   *See Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689 (1979).   The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.   *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).   Moreover, "[s]crutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."   *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991)).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to an inmate's serious medical needs.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).   This standard incorporates both objective and subjective elements.   *See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).   Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff members were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A "serious medical need" is, as indicated, an objective component.  It refers to  a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Iko*, 535 F.3d at 241 (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. It requires proof that the prison official knew of or was aware of the inmate's need for medical attention and disregarded an excessive risk to the inmate's health or safety. *Id*. at 837. Put another way, for liability to attach based on a violation of the Eighth Amendment, the law "requires consciousness of a risk. . . ." *Id*. at 840. The Fourth Circuit has said: "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

In *Farmer,* the Supreme Court rejected an objective test for deliberate indifference. *Id.* at 837; *see Wilson v. Seiter,* 501 U.S. 294, 303 (1991). The *Farmer* Court held that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. The *Farmer* Court added, *id.* at 842, that it is enough for an Eighth Amendment claimant to show that "the official acted or failed to act despite his knowledge of a substantial risk of serious harm." The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n.2 (4th Cir. 1997).

Under § 1983, individual liability must be based on personal conduct. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985); *see also Foote v. Spiegal*, 118 F.3d 1416, 1423

16

(110th Cir. 1997).  And, absent subjective knowledge, a prison official is not liable.  *Farmer*, 511 U.S. at 847; *see Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998).

To establish supervisory liability against a warden or others under § 1983, a plaintiff must establish:   "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff'; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994).  The *Shaw* Court also said, *id.* (internal citations omitted):

> To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. . . .   Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

In the context of medical care, the plaintiff generally must show that: (1) the supervisory defendant failed promptly to provide an inmate with needed medical care; (2) the supervisory defendant deliberately interfered with the prison doctors' performance; or (3) the supervisory defendant tacitly authorized or was indifferent to the prison physicians' constitutional violations. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

Even if the requisite subjective knowledge is established, a prison official may nonetheless avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.  Under the Eighth Amendment, "[a] prison official's duty . . . is to ensure "'reasonable safety' . . ." (citation omitted).  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001) (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Notably, inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Disagreements between medical staff and an inmate over the necessity for or the extent of medical treatment do not rise to a constitutional injury.  *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, *supra,* 766 F.2d at 849; *see also Fleming v. LeFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

Insofar as the Complaint names Warden Goins-Johnson as a defendant, there is no allegation or showing that she was personally involved in Shannon's medical care while he was incarcerated at Patuxent.  Shannon has provided no evidence demonstrating supervisory liability on the part of the Warden.  *See S*haw *v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990).  Rather, it appears that he seeks to hold the Warden responsible due solely to her role as administrator of the facility.  This is the very essence of the doctrine of *respondeat superior*, which has no place in § 1983 litigation.

18

The medical record is also pertinent.  The record does not reflect deliberate indifference to a serious medical need.

The medical record shows that Shannon has a history of poly-substance abuse, schizoaffective and delusional disorders, and chronic pain in his pelvis and thigh.  ECF 28, Affidavit of Kasahun Temesgen, M.D., Regional Medical Director for Corizon (citing plaintiff's Medical Records, Ex. B).  On September 7, 2011, plaintiff became upset after he was moved to a different housing unit, which he found too noisy.  He broke a toilet in his cell that flooded his tier.  He was moved to the CMHU for further assessment and treatment.  It is undisputed that he was found to be disheveled, uncooperative, and hyperactive, showed poor concentration and impulse control, and was unable to agree to refrain from harming himself or other people.  Dr. Shaw-Taylor prescribed Haldol (Haloperidol)[9] to calm Shannon down, with Benadryl to be administered at the same time.  The drugs were administered by Nurse Elizabeth Gerst.  ECF 28 at Ex. B, pgs. 1-12.  According to the record, Haldol was administered only one time.  *Id.* Shannon was also prescribed Cogentin, Risperidol, Depakote, and Dilantin.[10]  *Id.*, pgs. 13-21 & 54-59.

While housed on the CMHU, plaintiff continued to be uncooperative and hostile. Throughout September 2011, Shannon was monitored by mental health staff, and he was seen for

_____

[9] Haldol or haloperidol is a major anti-psychotic medication.  It is a prescription medication used to treat behavior problems, psychotic disorders, tics associated with Tourette's syndrome, and attention deficit hyperactivity disorder ("ADHD").  *See* www.rxlist.com/  haldol-drug.htm.

[10] Cogentin is used to control severe reactions to certain medicines that are used to treat nervous, mental, and emotional conditions.  *See* www.drugs.com/cons/cogentin-injection.html. Risperidol is a psychotropic agent indicated for the treatment of schizophrenia.  *See* www.druginformation.com/RxDrugs/.  Depakote and Dilantin are used to treat various types of seizure disorders.  *See* www.drugs.com/depakote &dilantin.html.

his medical complaint of inguinal hernia.  *Id.* at Tesmegan Decl. and Ex. B at pgs. 28-29.  The unrefuted record shows no evidence that Shannon complained of an allergic reaction to the Haldol or that he complained of pain from the prescribed medications.  30-44 & 46-52.

In the light most favorable to plaintiff, he would, at best, have a claim for medical malpractice (albeit a weak one).  Such a claim is not cognizable under 42 U.S.C. § 1983, and the court declines to exercise supplemental jurisdiction to examine such a tort claim.[11]

To the extent that the complaint names Corizon based solely upon vicarious liability, circuit law is clear.  A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior.  *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

### C.  Access to Library

Inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see also Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).  The Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996).  According to the *Lewis* opinion, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only

---

[11] Under Maryland law, a claim of medical malpractice may proceed in a state or federal court only after review before the Maryland Health Claims Alternative Dispute Resolution Office.  *See* Md. Code, Cts & Jud. Proc., § 3-2A-01 et seq.; *see also Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2007); *Davison v. Sinai Hospital of Balt. Inc.*, 462 F.Supp.778, 779-81 (D. Md. 1978).  There is no demonstration that plaintiff has sought or completed such review.

that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

Shannon's access-to-courts claim is relatively uncomplicated and straightforward: he makes a generalized claim that he was denied access to the library. Goins-Johnson avers that Shannon requested and was granted access to the library on November 28, 2011. Moreover, there is no record of Shannon requesting legal materials after this date. Most important, Shannon has failed to show how the alleged lack of access to legal materials prejudiced any ongoing litigation. Indeed, Shannon was able to pursue and file several federal cases during this time. *See Shannon v. Department of Public Safety and Correctional Services, et al.,* Civil Actions No. ELH-11-747 (D. Md.); *Shannon v. Department of Public Safety and Correctional Services, et al.,* Civil Action No. ELH-11-1830 (D. Md.); *Shannon v. Nero, et al.,* Civil Actions No. ELH-11-3156 (D. Md.); and *Shannon v. Patuxent Institution, et al.,* Civil Action No. ELH-11-3709 (D. Md.).

In my view, plaintiff has failed to craft a Fourteenth Amendment deprivation due to his inability to litigate cases. No access-to-courts violation has been demonstrated.

### D.  Assignment to Disciplinary Segregation

Generally, prisoners do not have a constitutional right to demand to be housed in one prison setting verses another. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Under the Supreme Court's pronouncement in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), a liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," without regard to mandatory language in prison regulations. Thus, the due process inquiry must focus on the nature of the deprivation alleged and not on the language of particular prison regulations. *Id.*

Placement in a housing unit that provides for a higher degree of prisoner monitoring is not atypical. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983). The Fourth Circuit has said that a liberty interest is not implicated when inmates are placed on administrative segregation because, when compared with the conditions they would expect to experience as an ordinary incident of prison life, such placement does not constitute an atypical and significant hardship. *See Beverati v. Smith*, 120 F.3d 500, 502-04 (4th Cir. 1997); *see also Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996). In *Beverati*, the Fourth Circuit held that Beverati's placement in segregation did not comparatively constitute the type of hardship necessary to give rise to a liberty interest in avoiding such placement. *See Beverati*, 120 F.3d at 503.

Here, the record does not show that the nature of Shannon's assignment to segregation comprised the kind of atypical hardship contemplated by *Sandin* or *Beverati*. Thus, his restriction did not implicate a liberty interest.

### E.  Religious Worship

Shannon contends that he was denied access to religious worship and kosher meals. There is no material dispute that, while plaintiff was confined to disciplinary segregation, he was precluded from attending monthly religious services due to security concerns. However, there is

no allegation that he was unable to conduct individual prayer in his cell.  Further, he asked for and was provided a kosher diet.  To the extent that plaintiff raises a First Amendment claim, the court finds no violation of his right of access to religious worship.

The First Amendment "deference" analysis found under *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), and *Turner v. Safley*, 482 U.S. 78 (1987), controls.  These cases held that incarceration leads to a limitation on many rights and privileges, as may be warranted by valid penological considerations, *see O'Lone*, 482 U.S. at 348, and that a prisoner's right to free exercise of his religion must give way to regulations that are "reasonably related to legitimate penological interests."  *Id.* at 349; *cf. Turner*, 482 U.S. at 89.  Defendant Goins-Johnson's Declaration indicates that at no point did Shannon indicate that his religious practices were impeded.  She argues, and it is not refuted, that Shannon did not raise any complaint that he was denied access to Jewish services or kosher meals.

### V.     Conclusion

For the reasons articulated above, the court shall grant the summary judgment motions filed by the defendants, for the reasons stated above.


Date: February 8, 2013                               _____/s/_____
                                                                      Ellen Lipton Hollander
                                                                      United States District Judge